# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE G. WEINSTEIN, <br> Plaintiff, <br> v. <br> GREG KUHL, et al., <br> Defendants. | Case No.18-cv-01351-HSG <br><br> **ORDER DENYING DEFENDANTS' MOTIONS TO WITHDRAW REFERENCE** <br><br> Re: Dkt. No. 7 |
| MARLENE G. WEINSTEIN, <br> Plaintiff, <br> v. <br> GREG KUHL, et al., <br> Defendants. | Case No.18-cv-01545-HSG <br><br><br><br> Re: Dkt. No. 6 |

Pending before the Court are two motions by two sets of defendants to withdraw the automatic reference to the United States Bankruptcy Court. *See* Case No. 18-1351, Dkt. No. 7-1; Case No. 18-1545, Dkt. No. 6. For the reasons set forth below, the Court **DENIES** the motions.

## I. BACKGROUND

Plaintiff Marlene G. Weinstein is the Chapter 7 Trustee of the Independent Adoption Center ("IAC" or "the Debtor"). *See* Dkt. No. 1-2 (Adversary Proceeding Complaint, or "Compl.").[1] IAC filed a voluntary petition for Chapter 6 relief on February 3, 2017, and a complaint in bankruptcy court on March 21. *Id.* at 1.

---

[1] Docket references are to Case Number 18-1351 unless otherwise indicated.

## A. Factual Allegations

IAC was a nonprofit public benefit corporation, "formed and organized for the purpose of providing adoption services to adopting parents." *Id.* ¶¶ 18–19. Generally, IAC would charge prospective adoptive parents an up-front fee in exchange for assistance throughout the adoption process. *Id.* ¶¶ 32–33. In 2016, "a decline in the availability of birth mothers" and a decline in new contracts with prospective adoptive parents led to a "financial crisis." *See id.* ¶¶ 34–37. The crisis resulted in IAC having obligations to "hundreds of adopting parents who had already paid for adoption services," but had not yet been placed with a child. *Id.* ¶ 39. IAC, however, "continued to seek and accept upfront fees from" prospective adoptive parents, *id.* ¶ 41, even though Defendants "knew or should have known that the Debtor could not perform its outstanding obligations," *id.* ¶ 42. As of January 31, 2017, there were still hundreds of adoptive parents awaiting placement. *Id.* ¶ 44.

## B. Bankruptcy Court Proceedings

On March 21, 2017, Plaintiff initiated an Adversary Proceeding in bankruptcy court on behalf of IAC against three groups of Defendants: the "Director Defendants" (i.e., Gregory S. Kuhl, Susan Sparling, Alex Kaplan, Nancy Worrell, Dan Ward, William Kinnane, and Christine Zwerling, all of whom were members of the Board of Directors on the day the IAC filed for Chapter 7 relief), the "Officer Defendant" (i.e., Marcia Hodges, who served as interim executive director of the IAC on the day it filed for Chapter 7 relief), and "Navigators" (i.e., Navigators Insurance Company, who issued a Directors & Officers Liability insurance policy during the relevant period). *Id.* ¶¶ 6–16.[2] Plaintiff asserted claims based on breach of fiduciary duty and negligence against the Director and Officer Defendants and Navigators and requested declaratory relief against the Director Defendants and Navigators. *See id.* ¶¶ 56–87.

After Plaintiff filed the Complaint, Navigators appointed counsel to represent the Defendants. Dkt. No. 7-1 (Officer Defendant's Motion to Withdraw Reference, or "Officer's Mot.") at 4. On May 30, Defendants answered the complaint, denying liability and the bankruptcy

---

[2] For purposes of this Order, Director Defendants and Officer Defendants (but not Navigators) will be collectively referred to as "Defendants."

court's jurisdiction and demanding a jury trial. *Id.* The bankruptcy court stayed the action with respect to Navigators on July 1, 2017. *Id.* at 5.

In July or August 2017, another insurer—Landmark American Insurance Company ("Landmark")—agreed to fund the defenses of Defendants, out of a Directors and Officers Liability Policy. *Id.* In August 2017, Navigators withdrew its defense of Director Defendants and Officer Defendant, leaving them without counsel. *Id.* While this was happening, Plaintiff continued litigating the case, sending a First Amended Initial Disclosure on July 28, and serving Requests for Production after the Scheduling Conference on August 1. *Id.*

On September 15, 2017, Landmark moved for an order authorizing it to pay for Defendants' defense costs out of the liability policy—or, in the alternative, for relief from the automatic stay to pay defense costs. *Id.* Landmark represented it was bringing the motion in an abundance of caution, due to the possibility that the liability policy was an asset of IAC's bankruptcy estate. *Id.* Plaintiff opposed the motion, which the bankruptcy court denied without prejudice. *Id.* Plaintiff continued serving requests for documents and admissions during this time. *See id.* at 6. Landmark renewed its motion to lift the bankruptcy stay and retain counsel for Defendants using its liability policy in December 2017. *Id.* Plaintiff again opposed the motion while continuing to serve document requests. *Id.*

On January 16, 2018, Plaintiff filed a First Amended Complaint ("FAC"). *Id.* On January 24, 2018, the court allowed Landmark to put $100,000 from the liability policy toward Defendants' defense, subject to further advances upon request. *Id.*

On January 25, 2018, a substitution of counsel was filed with respect to Officer Defendant. *Id.* On February 5, 2018, a notice of appearance as new counsel was filed with respect to Director Defendants. *Id.*; No. 18-1545, Dkt. No. 6 (Director Defendants' Motion to Withdraw or "Directors' Mot.") at 3. New counsel for Officer Defendant subsequently met and conferred with Plaintiff's counsel and produced several thousand documents in discovery. Officer's Mot. at 7. Officer Defendant answered the FAC on February 15, *id.* at 7, and Director Defendants answered the FAC on February 23, Directors' Mot. at 3.

### C. Motions to Withdraw Reference

Officer Defendant filed a motion to withdraw the reference on March 28, 2018. *See* Officer's Mot. Director Defendants filed a separate motion to withdraw the reference that same day. *See* Directors' Mot. Plaintiff filed a single opposition to both motions on May 29, 2018. *See* 18-1351, Dkt. No. 15 ("Opp."); 18-1545, Dkt. No. 10. Officer Defendant filed an amended reply on June 20, 2018, Dkt. No. 17 ("Officer's Reply"), and Director Defendants replied on June 12, 2018, No. 18-1545, Dkt. No. 11 ("Directors' Reply").

## II. LEGAL STANDARD

District courts have "original but not exclusive jurisdiction" over all bankruptcy proceedings. *See* 28 U.S.C. § 1334(b). Such proceedings fall into one of two categories: "core proceedings, in which the bankruptcy court may enter appropriate orders and judgment," and "non-core proceedings, which the bankruptcy court may hear but for which it may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review." *Sec. Farms v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (quoting 28 U.S.C. § 157) (internal quotation marks omitted).

In the Northern District of California, all bankruptcy cases are automatically referred to bankruptcy court. *See* 28 U.S.C. § 157(a) (permitting district courts to refer bankruptcy cases to the district's bankruptcy court); B.L.R. 5011-1(a) (referring all bankruptcy cases in the Northern District of California to its bankruptcy court). The district court, however, "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. 157(d)[3]; *see also* B.L.R. 5011-2. To determine whether a motion to withdraw the reference is timely, courts consider whether it "was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms*, 124 F.3d at 1007 n.3 (quoting *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)). And, in considering whether a party has shown cause to withdraw the reference, "a

---

[3] This provision governs permissive withdrawal of the reference. *See Sec. Farms*, 124 F.3d at 1088. Mandatory withdrawal of the reference is also governed by Section 157(d), but the Defendants concede that withdrawal here is not mandatory. *See* Officer's Mot. at 8; Directors' Mot. at 3.

1  district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

Finally, "[t]he party seeking withdrawal of the reference bears the burden of showing that the reference should be withdrawn." *In re Heller Ehrman LLP*, 464 B.R. 348, 351–52 (N.D. Cal. 2011) (citing *In re Larry's Apartment, LLC*, 210 B.R. 469, 472 (Bankr. D. Ariz. 1997)).

## III. DISCUSSION

### A. Defendants' Motions to Withdraw Are Not Timely

"A motion to withdraw is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms*, 124 F.3d at 1007 n. 3. In essence, this means the "first reasonable opportunity as evaluated within the specific factual context presented." *Hupp v. Educ. Credit Mgmt. Corp.*, No. 07CV1232WQH(NLS), 2007 WL 2703151, at *2 (S.D. Cal. Sept. 13, 2007) (internal quotation omitted). A motion may be untimely "when a significant amount of time has passed since the moving party had notice of the grounds for withdrawing the reference or where withdrawal would have an adverse effect on judicial economy." *In re Grace Miles*, No. C 10-0940 SBA, 2010 WL 3719174, at *2 (N.D. Cal. Sept. 17, 2010) (quoting *Hupp*, 2007 WL 2703151, at *3).

Defendants moved to withdraw on March 28, 2018, just over a year after the Complaint was filed. Officer Defendant attributes that delay to the dispute over the funding of her defense, asserting that she "lacked meaningful representation until January 24, 2018," when her new counsel appeared in the case after the court authorized Landmark to fund her defense. *See* Officer's Mot. at 16–17. Director Defendants contend that they "were not represented in the [underlying] adversarial proceeding—despite efforts from Landmark—between the time they filed an answer (or possibly before then) and February 5, 2018," when they obtained counsel. *See* Directors' Mot. at 7. Somewhat inconsistently, Officer Defendant claims that she was not "actively defended" after August 2017, Officer's Mot. at 1, and Director Defendants represent that their "insurance coverage" was "in a state of flux since early summer 2017," Directors' Mot. at 7.

5

Even taking at face value Defendants' assertions that they were left without representation beginning at some point during the summer of 2017, they have failed to carry their burden to prove that their motion is timely. Defendants answered the Complaint—with assistance of counsel—on May 30, 2017. *See* 18-1545, Dkt. No. 1-3 at 1–4, 7 (ECF pagination). Defendants have not demonstrated why the first reasonable opportunity to move to withdraw was not at the same time they filed their answer or shortly thereafter, when they had counsel. Moreover, Defendants' motions do not rely upon any new allegations or developments in the action that would give rise to a new reason to withdraw the reference. All that seems to have changed is that they have new counsel, who chose to pursue a new strategy. And at this juncture, when the bankruptcy court has been presiding over the case for over a year, withdrawing the reference would likely have an adverse effect on judicial economy. *See In re Grace Miles*, 2010 WL 3719174, at *2.

Defendants' motions to withdraw are untimely and thus must be denied.

**B.     Judicial Efficiency is Best Served by Denying the Motions to Withdraw**

Moreover, even if the Court found the motions to be timely, it would deny them on the independent ground that withdrawing the reference at this stage would be inefficient. Deciding whether to grant a motion for permissive withdrawal requires a district court to "consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008. The court "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Hjelmeset v. Cheng Hung*, No. 17-CV-05697-BLF, 2018 WL 558917, at *3 (N.D. Cal. Jan. 25, 2018) (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). "The determination of whether claims are core or non-core is not dispositive of a motion to withdraw a reference, but characterization of the claims as core or non-core is useful before considering the other factors." *Hjelmeset*, 2018 WL 558917, at *3 (quoting *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 223 (D. Haw. 2006)).

To begin, all of Plaintiff's claims are non-core. "[A]n action is non-core when there is not

1  a cause of action created by title 11 or one that only arises in title 11 cases, even if the action will

2  affect the administration of the estate." *Everett v. Art Brand Studios, LLC*, 556 B.R. 437, 443

3  (N.D. Cal. 2016) (quoting *In re Eastport Assocs.*, 935 F.2d 1071, 1077 (9th Cir. 1991)) (internal

4  quotation marks omitted). Plaintiff's negligence and breach of fiduciary duty claims are state law

5  causes of action that are neither created by federal bankruptcy law nor arise solely in federal

6  bankruptcy cases. Plaintiff's claim for declaratory judgment seeks the Court's interpretation of

7  Navigators' insurance policy and is likewise a non-core claim. *See In re Temecula Bancorp*, 523

8  B.R. 210, 223 (C.D. Cal. 2014) (claim for declaratory relief "arising from a pre-petition contract is

9  a non-core proceeding even if the debtor is a party to the contract at issue") (internal citation

10 omitted).

11 However, even considering the non-core nature of Plaintiff's claims, judicial efficiency is

12 best served by denying withdrawal of the reference here. Defendants argue that withdrawal is

13 more efficient because the bankruptcy court will not be able to conduct the jury trial they have

14 demanded and because de novo review of the bankruptcy court's orders by this Court will increase

15 their costs. Officer's Mot. at 11–13; Directors' Mot. at 6. But "bankruptcy courts are not divested

16 of pre-trial jurisdiction over matters which they ultimately may be unable to decide." *In re Cedar

17 Funding, Inc.*, 419 B.R. 807, 819 (B.A.P. 9th Cir. 2009) (citing *In re Healthcentral.com*, 504 F.3d

18 775, 787 (9th Cir. 2007)). In contrast, "requiring that an action be immediately transferred to

19 district court simply because of a *jury trial right* would run counter to our bankruptcy system." *In

20 re Healthcentral.com*, 504 F.3d at 787. And it is the bankruptcy court that must decide in the first

21 instance whether Defendants have a right to a jury trial. *See Hjelmest*, 2018 WL 558917, at *3;

22 Bankruptcy L.R. 9015-2(a). Finally, it is more efficient for the bankruptcy court—which is

23 already familiar with the law and facts—to continue adjudicating the case, rather than this Court

24 essentially starting from scratch. *See Hjelmeset*, 2018 WL 558917, at *4 (denying motion to

25 withdraw because it "would result in this court losing the benefit of the bankruptcy court's

26 experience in both the law and facts, resulting in an inefficient allocation of judicial resources").

27 The remaining *Security Farms* factors do not weigh in favor of withdrawing the reference.

28 As discussed above, it will ultimately be more efficient for the judiciary—and for the parties—to

continue to litigate this case in the bankruptcy court. There is no concern about forum shopping or the uniformity of bankruptcy administration, because all the claims are non-core and thus "this Court would have to conduct de novo review to the extent that the losing party had any objections." *Everett v. Art Brand Studios, LLC*, 556 B.R. 437, 445–46 (N.D. Cal. 2016).

Defendants have not satisfied their burden of demonstrating cause for permissive withdrawal and therefore the Court declines to exercise its discretion to withdraw the reference.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motions for withdrawal of the reference.

**IT IS SO ORDERED.**

Dated: 10/9/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge